IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

XAVIER MCCORMICK,        *

                          *

        Plaintiff        *

                          *

        v.                  *       Civil Case No. 07-2399-RWT

                          *

VERIZON MARYLAND INC.,      *

                          *

        Defendant     *

## MEMORANDUM OPINION

Plaintiff Xavier McCormick filed this *pro se* civil action against Defendant Verizon Maryland Inc. ("Verizon") on September 10, 2007.  His Complaint alleges Title VII and ADA violations based on discrimination on the basis of race, gender, and disability; retaliation; and harassment leading to a hostile work environment.  It also alleges state common law claims of defamation and intentional infliction of emotional distress.

On November 7, 2008, Defendant Verizon Maryland Inc. moved for summary judgment on all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56(c).

### I. FACTS[1]

#### A.  Demotion, Transfer, and Resignation

Plaintiff, a black male, began working for Bell Atlantic Corporation, Verizon's predecessor, in April of 2000 as a Maintenance Administrator.  Shortly after Bell Atlantic Corporation became Verizon in June, 2000, Plaintiff began to take continuing education courses with the goal of being promoted within the new organization.  Upon completion of these courses, Plaintiff updated his

---

[1]Because Plaintiff's Complaint is devoid of factual allegations, the following facts are drawn predominantly from Plaintiff's deposition testimony.

Personal Employee Data ("PED") form to reflect his accomplishments.  In so doing, he listed the courses he completed under the "certifications" category of the form, allegedly on the advice of a Verizon Future Link Representative.  Plaintiff then applied for a promotion to the position of Central Office Technician, which he was awarded in July, 2005, on the basis of the credentials listed on his PED form.

In the fall of 2006, another Verizon employee applied for the same promotion that Plaintiff had received one year prior.  When she was denied this advancement, the employee filed an internal grievance with Verizon, alleging that other employees, including Plaintiff, were less qualified for the position and thus wrongly promoted ahead of her.  This complaint prompted Verizon Team Leaders Michael Baker and Amina Brown to conduct an investigation of past promotions to the Central Office Technician position.

On October 4, 2006, Ms. Brown and Mr. Baker thus met with Plaintiff to discuss his PED form and application.  There it was discovered that Plaintiff improperly listed his course work on the form under "certifications" instead of "training," a distinction that Plaintiff contends was not conveyed to him before he filled out his application.  According to Verizon's Labor Relations Department, this mistaken representation constituted a falsification of records resulting in improper promotion ahead of more qualified applicants.  Consequently, Plaintiff was demoted back to the position of Maintenance Administrator on February 16, 2007.[2]  Plaintiff responded by filing a grievance with Verizon, which was denied.

Following Plaintiff's demotion, Verizon was unable to provide Plaintiff a permanent position

---

[2]Around this time, two other male employees suffered adverse employment actions for the same offense, one being demoted and one being terminated by Verizon.  No female employees were found to have engaged in the same misconduct.

at the Silver Spring location in the division in which he worked.  Thus, Ms. Brown arranged for Plaintiff to be transferred to Verizon's L Street location in Northwest Washington, D.C., on April 2, 2007.  The corporation granted Plaintiff a travel allowance in conjunction with this transfer to help cover the increased cost of transportation and parking.

Upon arriving at the L Street office, Plaintiff, who suffers from a congenital disc disease, discovered that all of the handicapped spaces were occupied by current employees and would not be available to him.  Because walking significant distances aggravates his back condition, Plaintiff complained to management in an effort to obtain more favorable parking.  In response, Verizon declined to increase their handicapped spaces at L Street or permanently reserve Plaintiff a closer parking space; however, Plaintiff was permitted to take leave without penalty under the Family and Medical Leave Act ("FMLA") on days on which his back condition rendered it too difficult to walk from the parking lot into the building, an option that Plaintiff exercised on several occasions.

Plaintiff remained in his Maintenance Administrator position at Verizon's L Street location until May, 2007, when he took Short Term Disability leave to treat his congenital disc disease. Rather than return to active employment with Verizon, Plaintiff accepted a severance package from the corporation in May, 2008, as part of a corporate downsizing.  He is therefore no longer a Verizon employee.

**B.  Investigatory Meetings**

In March of 2006, when Plaintiff was still employed with Verizon, his division underwent a change in management.  Thereafter, Plaintiff began to experience difficulties in the workplace, including being subjected to multiple investigatory meetings over a short period of time. During this time period, Paul Shay was the Director of Verizon's Silver Spring division, Michael Baker was

Plaintiff's immediate supervisor, and Amina Brown was Plaintiff's second-level supervisor.

In August of 2006, Plaintiff exhibited poor work attendance and was written up for three unexcused absences.  Subsequently, on October 14, 2006, Plaintiff was four hours late for his shift, only arriving after his supervisors called to question his whereabouts.  This incident prompted Mr. Baker to conduct an investigatory meeting into Plaintiff's recent attendance problems.  The manager's findings led him to impose upon Plaintiff a four-hour suspension for being absent without permission and to assign him to Step 1 of Verizon's Regional Attendance Plan ("RAP").[3]

In April of 2007, Plaintiff was again targeted for an attendance-related investigatory meeting under Mr. Baker's supervision when he elected to take FMLA leave from work, but failed to promptly exit the building.  No further punishment followed management's investigation into the incident.  Notably, he was not progressed from Step 1 on the RAP.

In addition to his attendance investigations, Plaintiff was the subject of a managerial investigatory meeting due to his conduct in the workplace.  On September 13, 2006, Plaintiff was observed presenting a fellow employee with a Washington Redskins calendar displaying female cheerleaders – allegedly including a Verizon employee – posing in bikinis.  Mr. Baker and Andre Mundell, another Verizon manager in the Silver Spring division, then conducted an investigation into the situation.  At this investigatory meeting, Plaintiff was provided with an Employee Contact Memorandum ("ECM") detailing the incident, and was informed that bringing a cheerleader calendar into the workplace was inappropriate employee behavior.  Plaintiff subsequently filed a grievance related to the investigatory meeting and the ECM was removed from his personnel file.

---

[3]The RAP is the process Verizon uses to progressively discipline employees with chronic attendance problems.  It is a multi-step program with no direct penalty accruing at the first stage, Step 1.

### C.  Nightclub Incident

One undisclosed Friday night during his employment period, Plaintiff claims to have attended a local gentleman's club at the same time as his supervisor, Amina Brown.  He alleges that upon his arrival, an exotic dancer who had been engaged in a conversation with Ms. Brown left her company to acknowledge Plaintiff's arrival.  At this moment, Ms. Brown allegedly grabbed the woman's arm in an aggressive manner in an unsuccessful attempt to prevent her from departing. Following this encounter, the dancer allegedly made several derogatory remarks about Ms. Brown to Plaintiff.

When Plaintiff arrived at work the following Monday, he alleges that a co-worker told him to "watch his back" around Ms. Brown because news of the nightclub encounter had spread throughout the office.  He further alleges that from this point forward his relationship with his managers deteriorated rapidly.  He attributes the alleged managerial harassment that followed this incident to retaliation for his interaction with the exotic dancer at the nightclub, contending that Ms. Brown, an alleged lesbian, viewed Plaintiff as a threat to her potential future relationships.

### D.  Management Complaints

On October 13, 2006, Plaintiff emailed Barbra Kittrel, another Verizon employee, to set up a meeting with Mr. Shay to complain about the way he perceived he was being treated by his new managers.[4]  This message was relayed to Ms. Brown, who informed Plaintiff that he needed to work through the proper chain of command, directing all management complaints to his immediate supervisors before speaking with the Division Director.  Plaintiff thus met with Ms. Brown to voice

---

[4]Plaintiff was apparently under the mistaken impression that Barbara Kittrel was Mr. Shay's Executive Assistant.  In fact, Judith Hensley occupied that role at the time and any meeting with Mr. Shay would have had to have been arranged through her.

his managerial concerns.  He presently contends that up until this point, Mr. Shay had provided an open-door policy to all other employees.

On January 25, 2007, Plaintiff expressed further frustration with his corporate managers by calling Verizon's Human Resources Ethics Line to file a complaint.  When he received no response, he called the Ethics Line once more on January 31, 2007, to raise the same issue.  Verizon's Human Resources Department again failed to respond to Plaintiff's complaint.

Gaining little success from his internal complaints, Plaintiff finally filed a grievance with the Equal Employment Opportunity Commission of Baltimore ("E.E.O.C." or "Commission"), allegedly on May 25, 2007, contending that Verizon had violated his civil rights throughout his employment with the corporation.  The E.E.O.C. then mailed Plaintiff a notice of right to sue letter on June 8, 2007, and Plaintiff filed this action on September 10, 2007.

## II. STANDARD OF REVIEW

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamon Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" only if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248-49.  However, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).

The Court may rely upon only those facts supported in the record, not simply assertions in

the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323-24).   To this end, the Court considers only properly authenticated, admissible evidence "on which a jury might rely" in reaching a determination. *Barwick v. Celotex Corp.*, 736 F.2d 946, 959 (4th Cir. 1984) (internal quotations omitted); *see also* Fed. R. Evid. 901.   When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

#### A. Federal Statutory Claims

#### 1. Timeliness

Actions under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (2006), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 (2006), begin as complaints to the E.E.O.C. by the aggrieved.   42 U.S.C. § 2000e(4); 29 C.F.R. § 1601.7 (2006). Once it receives a grievance, the Commission investigates the complainant's charge to determine if it is actionable.   42 U.S.C. § 2000e(4); 29 C.F.R. § 1601.21.   Should the complainant so request within 180 days of the filing of his complaint, the Commission will issue him a notification of right to sue so long as it finds reasonable cause that either Title VII or the ADA has been violated by the employer.   29 C.F.R. § 1601.28.   The aggrieved must then file a complaint with the court within ninety days of receiving notice of right to sue to maintain his claim.   42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a).

When the actual date of receipt of notice of right to sue is unknown, the Fourth Circuit

determines when the ninety-day period begins to run by invoking federal procedural rules.  *See* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."); *Nguyen v. Inova Alexandria Hosp.*, 1999 WL 556446, at *3 (4th Cir. July 30, 1999) (unpublished opinion).  Under this rubric, "it is presumed that service by regular mail is received within three days."  *Nguyen*, 1999 WL 556446, at *3 (citing to *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)).

In the case at bar, Plaintiff alleges that he filed a grievance with the E.E.O.C. on May 25, 2007.  The Commission then issued Plaintiff a right to sue letter by mail on June 8, 2007; however, Plaintiff testified at his deposition that he was unable to recall the precise date that he actually received the letter.  It is therefore presumed that Plaintiff was on notice of his right to sue as of June 11, 2007.

Verizon argues that because Plaintiff did not file his Complaint with the Court until September 10, 2007, ninety-one days after it is presumed he received the Commission's notice of right to sue, his claims were not timely filed as required by 42 U.S.C. § 2000e-5(f)(1).  However, the ninetieth day of Plaintiff's limitation period under the statute, September 9, 2007, was a Sunday. Fed. R. Civ. P. 6(a)(3) dictates that the final day of a limitations period is to be excluded when it falls on "a Saturday, Sunday, [or] legal holiday."  Furthermore, "[w]hen the last day is excluded, the period runs until the end of the next day that is not a Saturday, Sunday, [or] legal holiday."  *Id.* Thus, Plaintiff had until the end of September 10, 2007, to file his Complaint with the Court pursuant to the Federal Rules.  Plaintiff's Complaint was therefore timely filed and is properly before the Court.

### 2. **Title VII**

Title VII forbids an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This interdiction includes "limit[ing], segregat[ing], or classify[ing] . . . employees or applicants for employment in any way which would deprive or tend to deprive [them] of employment opportunities or otherwise adversely affect [their] status as . . . employee[s]." 42 U.S.C. § 2000e-2(a)(2).

Plaintiff alleges that Verizon managers violated this mandate by demoting him, involuntarily transferring him, subjecting him to unwarranted disciplinary actions, refusing to meet with him to discuss his managerial complaints, and generally harassing him on the basis of his race and his gender. Where, as here, a plaintiff presents no direct evidence of discrimination, the Court will analyze Title VII claims under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davis v. Dimensions Health Corp.*, 2009 WL 2168949, at *2 (D. Md. July 17, 2009) (slip opinion).

Under the *McDonnell Douglas* test, the initial burden of production lies with the plaintiff, who must first establish a *prima facie* case of discrimination actionable under Title VII. *McDonnell Douglas*, 411 U.S. at 802 (1973). If successful, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for subjecting the plaintiff to an adverse employment action. *Id.* Then, if the defendant is able to proffer a permissible basis for its action, the burden of production shifts once more to the plaintiff to prove that defendant's allegedly permissible reason was in fact a pretext for impermissible employment discrimination. *Id.* at 804.

*a. Racial Discrimination*

Plaintiff first charges Verizon with racial discrimination in violation of Title VII, contending that Paul Shay's refusal to meet with him on October 13, 2006, to discuss his managerial complaints was racially motivated.  Specifically, at his deposition, Plaintiff testified that he believed Mr. Shay instituted a "closed-door" policy in this instance not because of Verizon's employment protocol, but because Plaintiff is black.  Moreover, Plaintiff indicated at his deposition that this encounter represents the *sole* allegation of racial discrimination in his Complaint.  In his grievance to the E.E.O.C., however, Plaintiff attributed his demotion and subsequent transfer, and management's constant disciplinary actions, to Verizon's alleged racial animus.  At no point in his E.E.O.C. complaint did Plaintiff discuss Mr. Shay's policy of meeting with Verizon employees or allege that Mr. Shay altered this policy in Plaintiff's particular situation.

The Fourth Circuit has repeatedly articulated that a plaintiff must exhaust his administrative remedies with the E.E.O.C. before filing suit in federal court.  *See Chacko v. Patuxent Institution*, 429 F.3d 505, 506 (4th Cir. 2005); *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).  To fulfill this obligation, a plaintiff must set forth in his E.E.O.C. grievance all factual allegations that he anticipates raising at trial in order that the Commission may determine which, if any, claims are potentially actionable.  *Chacko*, 429 F.3d at 509.  Thus, when a plaintiff's "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit," he has failed to exhaust his administrative remedies and his claim must be dismissed.  *Id.* at 506.  At the same time, however, if the factual allegations in the administrative charge are reasonably related to those raised

at the litigation stage, a plaintiff may maintain his cause of action. *Id.* at 509.

Here, Plaintiff failed to directly raise any allegations pertaining to Mr. Shay's policies of addressing complaints in his E.E.O.C. grievance. Moreover, Plaintiff's conclusory allegation of discriminatory disciplinary action in his administrative complaint is not reasonably related to his current claim such that any impermissible conduct therein would be likely to be uncovered by the E.E.O.C. through "reasonable investigation of the original complaint." *Evans*, 80 F.3d at 963. Plaintiff has therefore failed to exhaust his administrative remedies with respect to his Title VII racial discrimination claim, and it shall be dismissed.

   *b. Gender Discrimination*

Plaintiff next alleges that Verizon manager Amina Brown unlawfully discriminated against him on the basis of gender by demoting him. Specifically, he contends that Ms. Brown viewed him as a rival to the affections of other females after an encounter at a gentleman's club where Plaintiff allegedly gained the attention of a female dancer who had been previously entertaining Ms. Brown. He further alleges that a fellow employee told him to "watch his back" around the office after this incident because Ms. Brown was not happy with Plaintiff's conduct at the nightclub. Most importantly for his Title VII claim, Plaintiff alleges that Ms. Brown demoted him to the position of Maintenance Administrator on the basis of his gender as a result of this encounter.

To establish a *prima facie* case of employment discrimination, Plaintiff must allege and prove that: "(1) he is a member of a protected group; (2) he earned satisfactory performance marks; (3) he suffered an adverse employment action; and (4) other similarly situated employees outside his protected class were treated more favorably." *McCain v. Waste Mgmt., Inc.*, 115 F. Supp. 2d 568, 573 (D. Md. 2000).

Verizon argues that Plaintiff has failed to establish a *prima facie* case of employment-related gender discrimination, as he has presented no evidence indicating that he was treated differently from other similarly situated employees.  At the time Plaintiff was demoted, two other Verizon employees had been charged with falsifying their PED forms during the application process for promotions.  Like Plaintiff, one of these employees was demoted to his former position for his conduct.  The other employee was discharged from the corporation.  Both employees were male.

There is simply no evidence in the record that any female employees were investigated for misrepresenting their qualifications on their PED forms, but failed to incur an adverse employment action.  In contrast, there *is* evidence that Verizon's protocol in such a situation was to take the very employment action that it did in this instance.  Plaintiff has thus failed to establish a *prima facie* case of gender discrimination.

Even if Plaintiff had sufficiently established a *prima facie* case of gender discrimination, he has failed to satisfy his burden of proving that Verizon's alleged legitimate reason for demoting Plaintiff – his falsification of employment records – was merely a pretext for unlawful discrimination.  Indeed, beyond his own unsubstantiated allegations to that effect, Plaintiff has not presented the Court with any evidence that his demotion was triggered by unlawful gender-based animus as opposed to lawful conduct-based discipline.[5]  Plaintiff's gender discrimination claim therefore fails as a matter of law.  *Accord Evans*, 80 F.3d at 960 (holding that "[w]hile a Title VII

---

[5]Plaintiff's bare allegations in his Opposition that he can present a witness at trial to testify that Ms. Brown consistently promoted women to high-paying positions within the organization while concurrently demoting men is insufficient to create a genuine dispute of material fact at this juncture.  Plaintiff failed to disclose this witness to Verizon during discovery – or even name this individual in his Opposition – and is therefore precluded from relying on his or her proffered testimony during litigation.  *See* Fed. R. Civ. P. 26(a)(1)(i); Fed. R. Civ. P. 37(c)(1).

plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient" to overcome summary judgment).

    *c. Hostile Work Environment*

    The Court construes Plaintiff's generalized "harassment" claim as an allegation of hostile work environment under Title VII.  To establish a *prima facie* case of hostile work environment harassment, Plaintiff must show that: "(1) he experienced unwelcome harassment; (2) the harassment was based on his [membership in a protected class]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006).  To constitute actionable harassment, this discriminatory conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment" in the eyes of a reasonable employee.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  Thus, "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Singleton v. Dep't of Correctional Education*, 115 F. App'x 119, 122 (4th Cir. 2004) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).  Rather, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult" to impose liability on the employer.  *Harris*, 510 U.S. at 21 (internal quotations omitted).

    Plaintiff alleges that Verizon supervisors harassed him through micro-management, nit-picking, over-observation, ridicule, bullying, and making snide remarks at his expense.  His only allegations of harassment that can be construed as being based on his membership in a protected class are those asserted against Amina Brown, who Plaintiff contends discriminated against him on

the basis of his gender.[6]  Specifically, Plaintiff alleges that Ms. Brown harassed Plaintiff through his immediate supervisor, Mr. Baker, by "over-managing" his workplace conduct.  This "over-management," Plaintiff contends, took the form of multiple investigatory meetings, false accusations, and unwarranted disciplinary actions.

As was the case with his gender discrimination claim, Plaintiff has failed to present any evidence beyond his own unsubstantiated allegations that Ms. Brown's conduct towards him was gender-motivated.  To fall within Title VII's purview, Plaintiff must present evidence that "but-for" his gender, he "would not have been the victim of the discrimination" alleged.  *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).  Here, Plaintiff has failed to meet this burden and is therefore unable to establish a *prima-facie* case of hostile work environment under Title VII.

    *d.  Retaliation*

In his final Title VII claim, Plaintiff alleges that Verizon management retaliated against him for complaints that he had made about supervisors through a multitude of allegedly adverse actions, including subjecting Plaintiff to multiple investigatory meetings, intimidating him in the workplace, removing his computer access, unjustly progressing him through the corporation's RAP, demoting him, and transferring him to another division.

---

[6]Though he contends that Mr. Baker, Mr. Mundell, and Chris Homberg also harassed him in the workplace, Plaintiff fails to allege that any did so because of his membership in a protected class.  Harassment claims not based on race, gender, religion, or national origin are not actionable under Title VII and thus cannot withstand summary judgment.  *See Patterson v. County of Fairfax, Virginia*, 2000 WL 655984, at *4 (4th Cir. May 18, 2000) (unpublished opinion) (holding that "[g]eneral harassment if not racial or sexual is not actionable" under the Title VII) (internal quotations omitted).

Plaintiff also contends that Verizon managers' failure to accommodate his disability constituted harassment.  This allegation is more properly construed as a claim under the ADA rather than Title VII, and will be addressed as such.

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show: (1) that he engaged in a protected activity, (2) that he was subjected to a materially adverse action by his employer, and (3) that there was a causal link between the protected activity and the adverse action. *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 59-61 (2006); *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). In the retaliation context, employment action is "materially adverse" when it is likely "have dissuaded a reasonable worker from making or supporting a [future] charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (internal quotations omitted).

Verizon principally argues that Plaintiff's retaliation claim fails as a matter of law because none of Plaintiff's allegations of adverse actions taken by Verizon were in response to statutorily protected activity. A "protected activity" under Title VII may fall into one of two categories: opposition or participation. *Cumbie v. General Shale Brick, Inc.*, 302 F. App'x 192, 194 (4th Cir. 2008). Oppositionary protected activity encompasses any employee action seeking to oppose discriminatory employment practices, including informal complaints to superiors. *Booth v. Maryland*, 2009 WL 2158096, at *8 (4th Cir. July 21, 2009) (slip opinion); *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 354 (4th Cir. 2009). To qualify as a protected activity, these complaints must pertain either to "an unlawful employment practice or actions [that] the employee reasonably believes are unlawful" under the statute. *Prince-Garrison*, 317 F. App'x at 354. Participatory protective activity, on the other hand, entails "charg[ing], testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under Title VII." *Cumbie*, 302 F. App'x at 194. This activity represents protected conduct under the statute regardless of whether or not it is objectively reasonable. *Id.*

Plaintiff has alleged three instances that could possibly fall under Title VII's definition of "protected activity": (1) his attempt to meet with Mr. Shay on October 13, 2006, to voice concerns about management; (2) his January, 2007, telephone calls to Verizon's Ethics Line to complain about his treatment in the workplace; and (3) his filing of a grievance with the E.E.O.C. on May 25, 2007.   As an initial matter, filing a Title VII grievance with the E.E.O.C. is a *per se* protected activity under the statute, as it is participatory in nature. *Id.* That said, none of Plaintiff's allegations of retaliation post-dates this activity.  When the adverse employment action precedes the employee's protected activity, it is self-evident that there cannot be a causal relationship between the two events. Plaintiff's retaliation claim must therefore rely on one of his other alleged protected activities.

Regarding his remaining management-related grievances, Plaintiff has failed to present any evidence that his internal complaints were in response to unlawful discriminatory practices undertaken by Verizon.  Rather, at his deposition, Plaintiff testified that he initiated these complaints in order to put an end to Verizon's recent disciplinary actions and alleged "over-management," which he suspected were efforts by his superiors to dispel a reputation that they were too lenient in their management tactics.   Thus, Plaintiff has failed to present a factual basis that he even *subjectively* viewed his treatment by management as violative of Title VII at the time of his complaints.  Without first establishing that he engaged in a protected activity that formed the basis for Verizon's allegedly retaliatory actions, Plaintiff cannot sustain a Title VII retaliation cause of action in the face of a motion for summary judgment. *Accord Wilson v. Milliken & Co.*, 1993 WL 509484, at *3 (4th Cir. Dec. 8, 1993) (unpublished opinion) (affirming a grant of summary judgment in favor of defendant where plaintiff failed to establish that she had engaged in a protected activity under Title VII).

*e. Conclusion as to Title VII*

The Court thus finds that all of Plaintiff's claims for relief under Title VII fail as a matter of law. Plaintiff's claim of racial discrimination shall be dismissed for failure to exhaust administrative remedies, while summary judgment shall be granted for Defendant on Plaintiff's gender discrimination, hostile work environment, and retaliation claims.

**3. ADA**

The Americans with Disabilities Act renders it illegal for an employer to "discriminate against a qualified individual on the basis of his disability in regard to . . . [any] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006). Discrimination under the statute encompasses a number of employment actions, including "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of [his or her] disability" and failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b).

In his grievance to the E.E.O.C., Plaintiff alleged that Verizon violated this decree by discriminating against him on the basis of his disability through harassment, unwarranted disciplinary actions, demoting him, and enacting his transfer to an unpopular Washington, D.C., division. At his deposition, however, Plaintiff clarified that his ADA claim against Verizon lies more in lack of accommodation for his disability throughout his employment than in disparate treatment discrimination.[7] To maintain a cause of action under either theory, Plaintiff must first

---

[7]Just as in Title VII claims, a plaintiff is required to exhaust his or her administrative remedies with the E.E.O.C. before bringing an ADA cause of action in federal court. *Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005). Due to the discrepancy between Plaintiff's

establish that he is disabled within the ADA's definition of the term, which Plaintiff has failed to accomplish. *Kriegsmann v. Firstworthy*, 268 F. App'x 244, 244 (4th Cir. 2008); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001).

Before January 1, 2009, the ADA defined a disability as: "(A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). In turn, the E.E.O.C. defined major life activities under the statute as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Moreover, to be substantially limited in this area, the E.E.O.C. held that the employee must be either "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* § 1630.2(j)(1). Adding to this steep standard, the Supreme Court in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002), held that these "terms need to be interpreted strictly to create a demanding standard for qualifying as disabled."

Dissatisfied with courts' and agencies' interpretation of the ADA, Congress recently enacted

---

allegations in this litigation and those in his administrative charge to the E.E.O.C., Verizon argues that Plaintiff's ADA claim should be dismissed for failure to exhaust administrative remedies. However, because failing to make "reasonable accommodations" is incorporated within the definition of "discrimination" under the ADA, 42 U.S.C. § 12112(b)(5)(A), the Court reads Plaintiff's failure to accommodate allegation as implicit in his discrimination charge to the E.E.O.C., and therefore properly before the Court at this time.

major changes to the statute in the ADA Amendments Act of 2008, Pub.L. 110-325; 122 Stat. 3553 (2008) ("ADAAA").  There, Congress expressly instructed courts that, contrary to the Supreme Court's declaration in *Toyota*, the definition of disability under the ADA is to be "construed in favor of broad coverage of individuals under [the] Act, to the maximum extent permitted by [its] terms." Pub.L. 110-325 § 4(a)(4)(A).  To this end, Congress rejected the E.E.O.C.'s interpretation of "substantially limit[ing]" major life activities as "severely restrict[ing]" them in favor of a more liberal interpretation of the terms.  *Id.* § 2(a)(5).

Though Congress explicitly gave the ADAAA an effective date of January 1, 2009, at no point did it specify whether or not this Amendment is to apply retroactively.  In *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the Supreme Court declared that when a statutory amendment "contains no such express command, the court must determine whether the new statute would have retroactive effect."  In undertaking this endeavor, courts should be mindful that "there is a "well-settled presumption" against giving retroactive effect to any law that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  *Id.* at 277, 280.  Following this guideline, a number of jurisdictions have declined to apply the ADAAA retroactively, viewing the statute as altering parties' duties and liabilities under the prior version of the ADA.  *See E.E.O.C. v. Argo Distribution, L.L.C.*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566-67 (6th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 F. App'x 850, 851 (7th Cir. 2008); *Barnes v. GE Sec., Inc.*, 2009 WL 1974770, at *1 (9th Cir. June 18, 2009) (slip opinion); *Fikes v. Wal-Mart, Inc.*, 2009 WL 961774, at *1 n.1 (11th Cir. Apr. 10, 2009) (slip opinion).  Though the Fourth Circuit has not spoken on the matter, this Court adopts the approach taken by the

aforementioned circuit courts, declining to apply the ADAAA to events occurring before its effective date.

Under the heightened standard of the former version of the ADA, Plaintiff has not presented evidence that he is "substantially limited" in his major life activities, and has therefore failed to meet his burden of showing that he is disabled within the meaning of the statute. In the employment context, a court's "central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." *Toyota*, 534 U.S. at 200. The factors relevant to this inquiry are "the nature and severity of the impairment," its "duration or expected duration" and the "permanent or long term impact . . . resulting from the impairment." 29 C.F.R. § 1630.2(j)(i)-(iii).

At his deposition, Plaintiff testified that because of his degenerative disc disease, he has difficulty sitting and standing for long periods, walking long distances without his legs becoming numb, and sleeping without tossing and turning. He further testified that he is unable to engage in certain physical activities around the workplace, such as picking up heavy stacks of paper. Notwithstanding these difficulties, Plaintiff also testified at his deposition that he is able to shop at the grocery store, that he can load the dishwasher, and, with assistance from adaptive devices, is generally able to shower and bathe himself. Moreover, though he owns a cane, Plaintiff indicated that he does not carry it regularly to assist him in walking.

Thus, Plaintiff has acknowledged that he is able to sit, stand, and walk on a daily basis, though it causes him a certain amount of difficulty. It is only when Plaintiff undertakes these activities for prolonged periods that he appears to incur more substantial problems in his daily life.

On these facts,[8] the Court cannot conclude that Plaintiff is "significantly restricted" in his major life activities. *See Posey v. E.I. Dupont De Nemours and Co., Inc.*, 1999 WL 150257, at *2 (4th Cir. Mar. 19, 1999) (unpublished opinion) (holding that hindrances in one's "ability to stand or walk for extended periods of time . . . alone do not create a substantial impairment under the ADA"). Plaintiff's ADA claim therefore fails as a matter of law. *Accord Armour v. City of Gary*, 2006 WL 1660749, at *8-9 (N.D. Ind. June 14, 2006) (unpublished opinion) (holding a plaintiff with herniated discs not disabled under the ADA where there was evidence that he could generally walk, stand, and lift objects, albeit with difficulty); *Raduziner v. O'Daniel Motor Center Inc.*, 2006 WL 2547096, at *2, *5 (D. Neb. Sept. 1, 2006) (unpublished opinion) (holding a plaintiff with a "degenerative disc disease with arthritis" who was limited in walking long distances, standing for extended periods, and lifting objects over twenty pounds to not be disabled under the ADA).

**B.  State Common Law Claims**

**1.  Defamation**

In addition to his federal statutory causes of action, Plaintiff has alleged a state common law claim of defamation against Verizon.  Plaintiff contends that his Verizon supervisors made defamatory statements about him by inserting false notes in his personnel file during disciplinary investigatory meetings, inaccurately reporting his arrival times in managerial reports, improperly issuing him tardy notification memorandums, accusing him of falsifying his PED form, and making

---

[8]Attached to his Opposition, Plaintiff has presented a number of medical records and documents, unsupported by any affidavit, that he contends support the assertion that he is disabled under the ADA.  Much of this documentation was not produced to Verizon during discovery and is therefore unavailable to Plaintiff at this juncture. *See* Fed. R. Civ. P. 37(c).  In addition, most, if not all, of Plaintiff's exhibits contain inadmissible hearsay. *See* Fed. R. Evid. 801, 802.  The Court relies only on the evidence properly before it in reaching its conclusion.

derogatory remarks about him in the workplace.

To establish a defamation claim under Maryland common law, Plaintiff must show: "[1] that the defendant made a defamatory statement to a third person; [2] that the statement was false; [3] that the defendant was legally at fault in making the statement; and [4] that the plaintiff thereby suffered harm." *Smith v. Danielczyk*, 928 A.2d 795, 805 (Md. 2007).

Verizon contends that in each of Plaintiff's allegations of defamation, he has failed to prove the existence of a false statement made by Verizon.   Under Maryland common law, a "false statement is one that is not substantially correct." *Batson v. Shiflett*, 602 A.2d 1191, 1212 (Md. 1992).  To this end, "a statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (internal quotations omitted).  The burden of proving falsity in a defamation claim is on the plaintiff.  *Id.*

First, Plaintiff charges Verizon with defamation in contending that Verizon managers contrived Plaintiff's alleged attendance problems through false managerial reports.  Specifically, Plaintiff alleges that Verizon inappropriately issued him a tardy notification memorandum on October 4, 2006; that a letter from Tabitha Cooley, a Verizon Absence Administrator, which denied Plaintiff FMLA leave, erroneously made it appear as though Plaintiff had an attendance problem by marking him absent on a day in which he claims to have been present at work; and that Mr. Baker often inaccurately reported Plaintiff's arrival times in supervisor reports.

Second, Plaintiff charges Verizon manager Michael Baker with defamation by alleging that he inserted false information in Plaintiff's personnel file following the investigatory meeting regarding the Washington Redskins cheerleader calendar that Plaintiff brought into work on September 13, 2006.  Specifically, Plaintiff contends that Mr. Baker attached an ECM to Plaintiff's

personnel file containing notes that insinuated that Plaintiff was "gawking" at a blond, white woman in a yellow bikini with a co-worker. Plaintiff insists that he was not staring inappropriately at the calendar, but instead was simply handing it to a fellow Verizon employee to show him a souvenir that he obtained at a football game the previous day. Moreover, he challenges the veracity of the description of the female cheerleader in this ECM, including her race, hair color, and attire.

Third, Plaintiff charges Amina Brown with defamation by contending that she falsely accused Plaintiff of falsifying his PED form in spearheading the investigation into his promotion. Plaintiff alleges that at the time that he completed his application for the position of Central Office Technician, he filled out his PED form according to Verizon's policies. Only after another employee filed a complaint, Plaintiff contends, did Verizon alter their PED template, thereby rendering his allegedly proper conduct a falsification of employment records.

In each of these instances, Plaintiff has failed to present evidence beyond his own unsubstantiated assertions that the alleged defamatory statements made by Verizon employees were false. In contrast, Verizon has supplied affidavit testimony as well as employment records, notes, and emails to attest to the truth of the allegedly defamatory statements made by Verizon personnel. In the face of countervailing evidence, Plaintiff must put forth a factual basis beyond his own bare allegations to withstand summary judgment. *See Felty*, 818 F.2d at 1128; *Beale*, 769 F.2d at 241. Here, Plaintiff has failed to meet this burden and his defamation claim fails as a matter of law. *Accord Booth v. Maryland*, 327 F.3d 377, 384 (4th Cir. 2003) (affirming a grant of summary judgment in favor of defendant where plaintiff "failed to present evidence that the defendants disseminated a false statement about him, [and thus] failed to establish a prima facie case of defamation under Maryland law").

-23-

**2.  Intentional Infliction of Emotional Distress**

Plaintiff's final allegation against Verizon is a state common law claim of intentional infliction of emotional distress.  Plaintiff contends that Verizon managers harassed him, lied to him on multiple occasions, unnecessarily reprimanded him, falsely accused him of inappropriate conduct in the workplace, and made derogatory and defamatory statements about him around the office, all of which induced Plaintiff to seek psychological counseling.

Under Maryland law, four elements comprise a cause of action for intentional infliction of emotional distress: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).  To succeed on a claim under this theory, "each of these elements must be . . . proved with specificity." *Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989).  To this end, Maryland courts impose a high burden on plaintiffs alleging intentional infliction of emotional distress claims, instructing that "recovery [under the doctrine] will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991) (internal quotations omitted).

Much of this weighty burden lies in proving the tort's second and fourth elements: the outrageousness of the defendant's conduct and the severity of the plaintiff's alleged resultant emotional distress.  To meet the threshold of "extreme and outrageous," a defendant's conduct "must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batson v. Shiflett*, 602 A.2d 1191, 1216

(Md. 1992) (quoting *Harris*, 380 A.2d at 614).  To be actionable, the conduct alleged must be so outrageous as to "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986).  Equally burdensome, to establish that emotional distress is actionably severe under Maryland law, a plaintiff must allege facts indicating "an emotional response so acute that no reasonable person could be expected to endure it," *Caldor, Inc. v. Bowden*, 625 A.2d 959, 964 (Md. 1993) (internal quotations omitted), for emotional distress is only "severe" under the Maryland standard when it is so substantial as to disrupt one's "ability to function on a daily basis." *Takacs*, 473 F. Supp. 2d at 652 (internal quotations omitted).

Here, assuming without deciding that Plaintiff could establish that his managers' conduct at Verizon was both intentional and causally connected to his emotional distress, he has fallen well short of his evidentiary burden of proving that Verizon managers' conduct throughout his employment was extreme and outrageous or of establishing the requisite severity of his injury.  First, Plaintiff has failed to allege conduct that is objectively "beyond all possible bounds of decency." *Batson*, 602 A.2d at 1216.  Indeed, Plaintiff has failed to allege facts indicating that Verizon's conduct exceeded "mere insults, indignities, threats, annoyances, [or] petty oppressions" in the workplace, which, by themselves, are insufficient to rise to the level of "extreme and outrageous" conduct under Maryland law.  *Id.*  Second, though Plaintiff has alleged that he regularly seeks counseling due to the psychological stress resultant from his former employment with Verizon, he has not established any factual basis that his distress is unbearable in the eyes of a reasonable person. *Caldor*, 625 A.2d at 964.  Nor has Plaintiff demonstrated that his distress is so severe as to disrupt his "ability to function on a daily basis." *Id.*  Accordingly, Plaintiff's claim of intentional infliction

of emotional distress fails as a matter of law.  *Accord Fofana v. Giant Food, Inc.*, 1994 WL 578095, at *1 (4th Cir. Oct. 19, 1994) (unpublished opinion) (affirming a directed verdict on an intentional infliction of emotional distress claim under Maryland law in favor of defendant where plaintiff "showed neither that the conduct alleged was outrageous or extreme nor that she suffered severe distress").

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate order, grant Defendant Verizon Maryland Inc.'s Motion for Summary Judgment [Paper No. 26].

Date: August 6, 2009 _____/s/_____
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE